**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQ.
PA Attorney ID: 319524
NJ Attorney ID: 125782014
1628 Pine Street
Philadelphia, PA 19103
Phone: 215-391-4790
Fax: 215-893-5288
Email: tim@dereksmithlaw.com
*Attorneys for Plaintiff, Karli Sculnick*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KARLI SCULNICK,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF CORRECTIONS, STATE CORRECTIONAL INSTITUTION AT PHOENIX; and MICHAEL McCAIN, individually,**<br><br>Defendants. | : | Civil Action No. ___________<br><br>**JURY TRIAL DEMANDED** |

# CIVIL ACTION COMPLAINT

Plaintiff, Karli Sculnick, by and through undersigned counsel, hereby files this Civil Action Complaint against Defendant Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Phoenix ("Defendant DOC" or, unless otherwise specified, "Defendant") and Defendant Michael McCain ("Defendant McCain") (collectively, "Defendants"), and alleges the following upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters:

## PARTIES

1. Plaintiff, Karli Sculnick (hereinafter referred to as "Plaintiff"), is a female individual who is a resident of Delaware County, Pennsylvania.

2. Defendant, Commonwealth of Pennsylvania, Department of Corrections, State Correctional Institution at Phoenix (hereinafter referred to as "Defendant DOC" or, unless otherwise specified, "Defendant"), is an executive agency of the Commonwealth of Pennsylvania that owns and operates State Correctional Institution at Phoenix ("SCI Phoenix"), a state prison located at 1200 Mokychic Road, Collegeville (Skippack Township), Montgomery County, Pennsylvania 19426.

3. At all times material, Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. § 2000e(b), and employed well in excess of five hundred (500) employees in each of twenty or more calendar weeks in the current or preceding calendar year.

4. At all times material, Defendant acted by and through its agents, servants, and employees, including its sergeants, lieutenants, captains, security personnel, Equal Employment Opportunity ("EEO") personnel, and human resources personnel, each of whom acted within the course and scope of his or her employment with Defendant.

5. At all times material, Defendant Michael McCain (hereinafter referred to as "Defendant McCain" or "Sgt. McCain") was a male Corrections Sergeant employed by Defendant DOC in the SCI Phoenix training department. Defendant McCain is sued in his individual capacity.

6. From in or about March 2024 until the events described below, Sgt. McCain was Plaintiff's training sergeant and her designated direct point of contact for her probationary year, and maintained supervisory authority over Plaintiff, including the authority to direct her daily work, review and sign her training book, and evaluate her performance and progress.

7. At all times material, Sergeant Maynard (hereinafter referred to as "Sgt. Maynard") was a training sergeant employed by Defendant DOC who, on December 5, 2024, after Plaintiff had reported Sgt. McCain, was designated as Plaintiff's point of contact and thereafter maintained supervisory authority over her probationary training.

## NATURE OF THE CASE

8. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and, as against Defendant McCain, pursuant to the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being subjected to sex/gender discrimination, sexual harassment, a hostile work environment, retaliation, and wrongful termination by the aforementioned Defendants.

9. Furthermore, this action is to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination against Plaintiff because of her sex, its failure to prevent and correct the sexual harassment of Plaintiff by her supervising sergeant, its retaliation against Plaintiff because she reported that harassment, and its wrongful actions against Plaintiff leading up to, and including, her unlawful termination on March 3, 2025, one day before her probationary period was to end.

10. Plaintiff seeks declaratory and injunctive relief, reinstatement, back pay, front pay, compensatory damages, attorneys' fees, expert fees to the extent recoverable under law, litigation costs, and pre- and post-judgment interest as remedies for Defendant's violations of her rights.

## JURISDICTION, VENUE, AND NON-JURISDICTIONAL PRESCRIPTIONS

11. This Court has subject matter jurisdiction over this matter as it involves a Federal Question, 28 U.S.C. § 1331, arises under an Act of Congress providing for the protection of civil rights, 28 U.S.C. § 1343(a)(4), and is brought pursuant to 42 U.S.C. § 2000e-5(f)(3).

12. This Court has supplemental jurisdiction over Plaintiff's claim under the PHRA against Defendant McCain pursuant to 28 U.S.C. § 1367(a), because that claim is so related to Plaintiff's federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

13. Venue is appropriate before this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3), as the unlawful employment practices alleged herein were committed at SCI Phoenix in Montgomery County, Plaintiff's employment records are maintained and administered there, Plaintiff would have continued working there but for the unlawful employment practices alleged herein, and all actions and omissions giving rise to this litigation occurred in the Eastern District of Pennsylvania (i.e. Berks, Bucks, Chester, Delaware, Lancaster, Lehigh, Montgomery, Northampton, and Philadelphia).

14. Furthermore, Plaintiff has adequately satisfied non-jurisdictional prescriptions to bring these employment discrimination claims as she exhausted administrative remedies by having filed a timely, verified Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2025, EEOC Charge No. 530-2025-08190 (the "Charge"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), PHRC Case No. 202502000.

15. The Charge alleged sex/gender discrimination, sexual harassment, hostile work environment, and retaliation; claimed actual and/or constructive discharge; and alleged a continuing violation and a continuous practice of discrimination and retaliation. Each claim

asserted herein is within the scope of the Charge and of the EEOC investigation that could reasonably be expected to grow out of it.

16. The Charge named SCI Phoenix, the Department of Corrections facility at which Plaintiff was employed, and Defendant McCain, individually, as Respondents. Defendant received notice of the Charge and participated in the EEOC proceedings through the Department of Corrections' Office of Chief Counsel, including by submitting a position statement.

17. The Charge was filed within 300 days of each of the discrete adverse employment actions alleged herein, including the two written reprimands and the Notice of Pre-Disciplinary Conference issued to Plaintiff on March 3, 2025 and her termination on March 3, 2025, and within 300 days of acts contributing to the hostile work environment alleged herein, including the events of December 5, 2024.

18. This action is filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue in this matter.

19. All conditions precedent to the institution of this action have been fulfilled, have occurred, or have been waived.

20. The Charge was dual-filed with the PHRC under the PHRA pursuant to the worksharing agreement between the EEOC and the PHRC, under which the EEOC acts as the PHRC's agent for the receipt of charges. By letter dated February 6, 2026, PHRC Case No. 202502000, the PHRC confirmed the dual-filing and that the Charge is deemed filed with the PHRC as of the date the EEOC received it, July 21, 2025. More than one year has elapsed since the Charge was filed with the PHRC, and Plaintiff may therefore bring her PHRA claim in court. 43 P.S. § 962(c)(1). Because the Eleventh Amendment to the United States Constitution precludes this Court from adjudicating PHRA claims against Defendant DOC, an agency of the

Commonwealth, Plaintiff does not assert PHRA claims against Defendant DOC in this action, and expressly reserves, and does not waive, all such claims. Plaintiff asserts her PHRA claim herein against Defendant McCain, who was named individually as a Respondent in the Charge.

## MATERIAL FACTS

21. On or about March 4, 2024, Plaintiff was hired by Defendant as a Corrections Officer at SCI Phoenix.

22. Plaintiff's employment was subject to a one-year probationary period, during which Defendant's training sergeants instructed, monitored, documented, and evaluated her work.

23. Defendant assigned Sgt. McCain as Plaintiff's direct point of contact for her probationary year.

24. Sgt. McCain held a bid post as a training sergeant with supervisory responsibility for subordinates. Plaintiff, a Corrections Officer Trainee, was subordinate to Sgt. McCain in rank and subject to his direction.

25. Defendant relied upon its training sergeants' daily training-book reviews, sign-offs, and evaluations in deciding whether probationary Corrections Officers would be retained.

26. At all times material, Plaintiff performed her duties satisfactorily.

27. On September 13, 2024, Plaintiff received a message through the Facebook Messenger application from Sgt. McCain, asking, "Want to see something funny?"

28. Plaintiff responded the following day, September 14, 2024, "Sure lol."

29. Sgt. McCain then sent Plaintiff a photograph of himself, from the waist down, in a medical diaper, visibly and prominently sexually aroused.

30. At the time Sgt. McCain sent the photograph, he was out of work on a medical leave of absence.

31. The photograph was sexually explicit, unsolicited, and unwelcome.

32. Plaintiff felt shocked, disgusted, and extremely uncomfortable.

33. Plaintiff did not respond to the photograph.

34. Sgt. McCain sent the photograph to Plaintiff because of her sex.

35. At the time, Plaintiff was a probationary Corrections Officer whose continued employment depended upon the evaluations of her training sergeants. While Sgt. McCain was out on medical leave, Defendant did not assign Plaintiff a specific training sergeant; instead, Plaintiff's point of contact on any given day was whichever sergeant was working in the training department.

36. Throughout his medical leave, Sgt. McCain remained a training sergeant in the SCI Phoenix training department and retained the bid position from which he had supervised and evaluated Plaintiff's probationary training.

37. Plaintiff disclosed the photograph to the other sergeants who were training her, Sergeant Major and Sergeant Moyer.

38. Rather than reporting Sgt. McCain's conduct or directing Plaintiff to Defendant's complaint procedure, those sergeants recommended that, instead of formally reporting the incident, Plaintiff ask Sgt. McCain for forgiveness.

39. Neither sergeant reported Sgt. McCain's conduct to Defendant's EEO office or to management.

40. When Plaintiff spoke with a female coworker, she was advised to report the incident to a female lieutenant, Lieutenant Joliff.

41. Before Plaintiff formally reported the incident, she returned to the Facebook Messenger application and saw a new message from Sgt. McCain, which stated: "Karli what the fuck? Why would you report me for making you uncomfortable?"

42. Sgt. McCain then tried to tell Plaintiff that the image was "just a joke."

43. Sgt. McCain learned of Plaintiff's disclosure from one or more of the sergeants in whom she had confided, and sent his message to intimidate Plaintiff and deter her from reporting him.

44. On or about September 15, 2024, Plaintiff formally reported Sgt. McCain's conduct to Lieutenant Joliff, and Defendant opened an EEO investigation.

45. Plaintiff's disclosures to her training sergeants, her formal report to Lieutenant Joliff, and her participation in Defendant's EEO investigation opposed sexual harassment that Plaintiff reasonably and in good faith believed to be unlawful.

46. Sgt. McCain remained out of work on his medical leave of absence while Defendant's investigation proceeded.

47. On December 5, 2024, Sgt. McCain returned to work from his medical leave, while Plaintiff's complaint against him remained under investigation.

48. That same day, Major David Mascellino issued Sgt. McCain a memorandum confirming that a meeting had been held with him to discuss his work performance on his bid post and reports of unprofessional behavior toward his subordinates, and advising that a further meeting would be held after the investigation to determine whether he would keep his bid position as a training sergeant.

49. As of December 5, 2024, Sgt. McCain continued to hold his bid position as a training sergeant.

50. That same evening, Plaintiff was working on a housing unit when she received a telephone call from one of the security lieutenants, Lieutenant Gordon, directing her to come to his office because he had received a document at his printer with Plaintiff's name on it.

51. When Plaintiff arrived, Lieutenant Gordon showed her screenshots of her private Facebook Messenger conversation with Sgt. McCain, the conversation that was the subject of her pending sexual harassment complaint.

52. Sgt. McCain had printed the screenshots at work on the same day he returned to the facility and was counseled regarding reports of unprofessional behavior toward his subordinates. Defendant DOC has admitted that Sgt. McCain printed the messages.

53. Sgt. McCain had cropped his own name and face out of the screenshots, while leaving Plaintiff's name and personal information exposed.

54. Sgt. McCain had also cut off the printed conversation immediately before the point at which he sent Plaintiff the sexually explicit photograph, so that the printout omitted the photograph and his own sexual misconduct.

55. The printed portion of the conversation consisted of earlier messages, including messages in which Plaintiff had complained about a shift she had worked.

56. Sgt. McCain selectively edited and printed the conversation in this manner to conceal his sexual harassment of Plaintiff, to portray Plaintiff unfavorably, and to discredit Plaintiff and her sexual harassment complaint while Defendant's investigation of that complaint was pending.

57. Sgt. McCain used Defendant DOC's workplace computer and printing systems to send the screenshots to a printer in the office of a security lieutenant, a superior officer to Plaintiff, where they were retrieved and viewed by that lieutenant.

58. As a result, Plaintiff, a probationary trainee, was summoned from her post by a superior officer to view a selectively edited printout of her private messages with her training

sergeant, circulated within the facility with her identity exposed and his identity, and his sexual misconduct, concealed.

59. Plaintiff felt humiliated.

60. Defendant DOC has asserted that Sgt. McCain printed the messages "to be prepared in case Security asked to talk to him about them as it related to the investigation."

61. Sgt. McCain's stated explanation is not credible. A sergeant preparing to answer Security's questions about a photograph he had sent would have had no reason to remove his own name and face from the messages or to cut off the conversation immediately before the photograph.

62. By selectively editing, printing, and circulating the conversation inside SCI Phoenix, Sgt. McCain sought to conceal his sexual harassment of Plaintiff and to discredit the woman who had reported it, thereby continuing and intensifying the sexually hostile environment to which he had subjected Plaintiff because of her sex, exposing her to humiliation before her superior officers, and retaliating against her for reporting him.

63. Defendant accepted Sgt. McCain's explanation and imposed no discipline on Sgt. McCain for circulating Plaintiff's messages within the facility.

64. On December 5, 2024, the same day Sgt. McCain returned to work and circulated Plaintiff's messages within the facility, and while the EEO investigation remained pending, Security Deputy Curtis informed Plaintiff that Sgt. Maynard would be her point of contact.

65. As Plaintiff's point of contact during her probationary period, Sgt. Maynard was required to report to Plaintiff's shift daily, collect, review, and sign her training book, and answer any questions she might have.

66. Sgt. Maynard failed to do so. For weeks after he was designated as Plaintiff's point of contact, Sgt. Maynard did not sign Plaintiff's training book.

67. Sgt. Maynard knew that Plaintiff had reported Sgt. McCain, a fellow training sergeant, and refused to perform his training duties because she had done so.

68. Sgt. Maynard's refusal deprived Plaintiff of the training, supervision, and documentation she needed to complete her probationary period successfully.

69. Plaintiff made upper management aware of the retaliation she was experiencing, including by reporting it to Lieutenant Gordon and to Captain Young.

70. Plaintiff was advised that Defendant had a "zero tolerance" policy for retaliation; however, no actions were taken to protect Plaintiff from the retaliation she was experiencing.

71. In or about mid-December 2024, Plaintiff was advised that the EEO investigation had found her claims to be "unsubstantiated."

72. Defendant has never disputed that Sgt. McCain sent the photograph to Plaintiff.

73. Defendant's investigation disregarded Sgt. McCain's confrontation of Plaintiff before she formally reported him, his circulation of her messages within the facility, Sgt. Maynard's refusal to perform his duties, and the training sergeants' advice that Plaintiff seek forgiveness rather than report.

74. Defendant's anti-harassment and anti-retaliation policies existed on paper only. Defendant's supervisors discouraged reporting, its investigation failed to remedy the harassment, and its managers took no action when Plaintiff reported retaliation.

75. Following Plaintiff's complaints and the close of the EEO investigation, Defendant subjected Plaintiff's attendance to heightened scrutiny.

76. The absences upon which Defendant relied were approved leave, and Plaintiff had leave available to cover them.

77. On March 3, 2025, Defendant issued Plaintiff a Written Reprimand for "unacceptable attendance" and a Notice of Pre-Disciplinary Conference.

78. Although Defendant dated the Written Reprimand and Notice of Pre-Disciplinary Conference February 27, 2025, Defendant did not issue them to Plaintiff until March 3, 2025, the same day it held the pre-disciplinary conference.

79. February 27, 2025 was one of Plaintiff's regularly scheduled days off, and Plaintiff was not working at the facility that day. Plaintiff signed and dated the documents on the date they were actually issued to her, March 3, 2025.

80. Defendant's policy, as set forth in its employee handbook and/or the applicable collective bargaining agreement, and as Defendant instructed Plaintiff during her training, requires that an employee scheduled for a pre-disciplinary conference be notified at least seventy-two (72) hours in advance. By dating the documents February 27, 2025 and withholding them until the day of the conference, Defendant denied Plaintiff the advance notice its own policy required and any meaningful opportunity to prepare a response. Defendant's departure from its own policy is further evidence that its stated reason for disciplining and terminating Plaintiff was pretextual.

81. Before March 3, 2025, the only discipline in Plaintiff's personnel file was a single verbal reprimand.

82. Plaintiff's training lieutenant, Lieutenant Spivey, issued Plaintiff two written reprimands on March 3, 2025, before the pre-disciplinary conference, one of which was the Written Reprimand dated February 27, 2025.

83. Later that same day, Lieutenant Spivey withdrew both written reprimands, including the Written Reprimand dated February 27, 2025, and Plaintiff signed a document stating that they had been issued in error.

84. Lieutenant Spivey withdrew the reprimands because Lieutenant Spivey had not been informed of Plaintiff's pre-disciplinary conference until after the fact.

85. Defendant's own training lieutenant thus withdrew, as issued in error, the very Written Reprimand that accompanied the Notice of Pre-Disciplinary Conference, together with the second written reprimand issued the same day. With both reprimands withdrawn, the only discipline in Plaintiff's personnel file was a single verbal reprimand.

86. The only written reprimands Defendant ever issued to Plaintiff were the two written reprimands that Lieutenant Spivey withdrew as issued in error on March 3, 2025. To the extent Defendant contends that Plaintiff had a history of written discipline, that contention rests on reprimands Defendant itself withdrew.

87. Defendant nonetheless terminated Plaintiff the same day, without following its own progressive-discipline process. That Defendant issued two written reprimands on the day of Plaintiff's termination, without informing the lieutenant who issued them of the pre-disciplinary conference already set in motion, then withdrew both as issued in error and terminated Plaintiff anyway, shows that Defendant's managers were assembling a disciplinary record after the decision to terminate Plaintiff had been made, and that Defendant's stated reason for terminating Plaintiff was pretextual.

88. On March 3, 2025, the same day it issued Plaintiff the Written Reprimand and Notice of Pre-Disciplinary Conference and held the conference, Defendant terminated Plaintiff's employment.

89. The pretextual reason given for Plaintiff's termination was "unacceptable attendance."

90. Plaintiff's probationary period was scheduled to end on or about March 4, 2025, the day after Defendant terminated her.

91. Other Corrections Officers who called out or used leave in circumstances similar to Plaintiff's, including male Corrections Officers who had not complained of sexual harassment, such as Officer Benson, were not disciplined or terminated.

92. Defendant's stated reason for disciplining and terminating Plaintiff is false and a pretext for discrimination because of Plaintiff's sex and retaliation for her protected activity.

93. The individuals who initiated, recommended, and approved Plaintiff's discipline and termination knew of Plaintiff's complaints of sexual harassment and retaliation.

94. Defendant's decision to terminate Plaintiff relied, in whole or in part, upon training records, evaluations, and input from Sgt. McCain and other training sergeants, including Sgt. Maynard, who harbored animus toward Plaintiff because of her sex and her complaints.

95. Plaintiff's termination was the culmination of the sexual harassment and retaliation to which Defendant subjected her, and constitutes a tangible employment action.

96. Defendant's conduct following Plaintiff's protected activity, Sgt. McCain's confrontation of Plaintiff, his circulation of her messages, Sgt. Maynard's refusal to train her, management's failure to act, the heightened scrutiny of her attendance, the backdated Written Reprimand and Notice of Pre-Disciplinary Conference and a second written reprimand issued to her on the day of the conference, both reprimands withdrawn the same day as issued in error, and her termination on the eve of the completion of her probation, constitutes a pattern of antagonism following protected activity.

97. Sgt. McCain and Sgt. Maynard kept their positions. Plaintiff, who complained, was fired.

98. Following her termination, Plaintiff's union, the Pennsylvania State Corrections Officers Association, pursued a grievance on Plaintiff's behalf (Grievance No. PHX-025-070). Plaintiff's grievance does not waive, and is independent of, her statutory rights under Title VII. Plaintiff did not execute any agreement to arbitrate her statutory claims and the applicable collective bargaining agreement does not clearly and unmistakably require the arbitration of statutory discrimination claims. To the extent Defendant contends that any predispute arbitration agreement applies, Plaintiff elects, pursuant to 9 U.S.C. § 402(a), that such agreement is not valid or enforceable with respect to this case, which relates to a sexual harassment dispute.

99. Plaintiff trusted her employer, Defendant, to ensure a work environment free from sexual harassment and retaliation and to protect her from same.

100. Yet instead, Plaintiff was discriminated against and harassed via unwelcome comments and actions, thereby creating a hostile work environment.

101. Plaintiff feels violated but, perhaps more disturbingly, feels as though she should not have resisted the unlawful and unwelcome discrimination. Defendant's willful and reckless unlawful actions in this matter have a chilling effect not only on Plaintiff, causing her further harm, damages, and injury, but which would reverberate throughout Defendant's workforce if not addressed.

102. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

103. As a result of the acts and conduct complained of herein, Plaintiff has suffered the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

104. Plaintiff has further experienced severe emotional and physical distress, for which she has sought counseling.

105. That as a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

106. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

107. Plaintiff claims that Defendant unlawfully discriminated against Plaintiff because of Plaintiff's sex/gender, and retaliated against Plaintiff because of her opposition to sexual harassment and discrimination, because she engaged in protected activities, and because Plaintiff opposed the unlawful conduct of Defendant related to the above protected class.

108. Plaintiff further claims actual and/or constructive discharge, as Plaintiff was terminated from her position as a result of the unlawful discrimination and retaliation.

109. The above are just some examples of some of the discrimination and retaliation to which Defendant subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

110. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

111. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

112. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

## CAUSES OF ACTION

### COUNT I
### TITLE VII DISPARATE TREATMENT (SEX/GENDER)
### 42 U.S.C. § 2000e-2
### (*Plaintiff v. Defendant DOC*)

113. Plaintiff repeats, realleges, and incorporates by reference each-and-every allegation and paragraph made in this complaint.

114. Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

115. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

116. Plaintiff is a member of a protected class (female), was qualified for her position as a Corrections Officer, and performed her duties satisfactorily.

117. Defendant engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training, and privileges of employment because of her sex.

118. Defendant subjected Plaintiff to adverse tangible employment actions, including the denial of training and supervision necessary to complete her probation, heightened scrutiny,

the Notice of Pre-Disciplinary Conference issued to her on March 3, 2025, and the termination of her employment on March 3, 2025, under circumstances giving rise to an inference of discrimination, including the more favorable treatment of similarly situated male Corrections Officers.

119. Plaintiff's sex played a determinative factor in Defendant's decisions.

120. Defendant cannot show any legitimate nondiscriminatory reasons for its employment practices, and any reasons proffered by Defendant for its actions against Plaintiff, including "unacceptable attendance," are pretextual and can readily be disbelieved.

121. Alternatively, Plaintiff's sex played a motivating part in Defendant's decisions even if other factors may also have motivated its actions against Plaintiff.

122. Defendant acted with the intent to discriminate.

123. Defendant acted upon a continuing course of conduct.

124. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**TITLE VII SEXUAL HARASSMENT**
**42 U.S.C. § 2000e-2(a)(1)**
**(*Plaintiff v. Defendant DOC*)**

125. Plaintiff repeats, realleges, and incorporates by reference each-and-every allegation and paragraph made in this complaint.

126. Sexual harassment is a form of sex discrimination prohibited by Title VII. "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that

supervisor 'discriminate[s]' on the basis of sex." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).

127. Title VII is violated where sexual harassment is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Id.* at 67 (alteration in original) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). The standard is disjunctive: harassment that is sufficiently severe may be actionable even if it is not pervasive. *Castleberry v. STI Group*, 863 F.3d 259, 264-65 (3d Cir. 2017).

128. An employer is vicariously liable, and no affirmative defense is available, when supervisor harassment "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).

129. Sgt. McCain, Plaintiff's training sergeant and designated point of contact, subjected Plaintiff to sexual harassment by sending her, a probationary subordinate, an unsolicited, sexually explicit photograph of himself in a visibly aroused state; by confronting and berating her with profanity when he learned she intended to report him; and by circulating within SCI Phoenix a selectively edited printout of their private conversation, from which he had removed his own name and face and the sexually explicit photograph, in order to discredit her while her complaint was pending.

130. Sgt. McCain's conduct was sexual in nature, occurred because of Plaintiff's sex, and was unwelcome.

131. Sgt. McCain's conduct was sufficiently severe or pervasive that a reasonable woman in Plaintiff's position would find her work environment hostile or abusive, and Plaintiff subjectively perceived it as such.

132. Sgt. McCain was Plaintiff's supervisor. Defendant delegated to Sgt. McCain and its other training sergeants the authority to direct Plaintiff's daily work and to review, document, and evaluate her performance during her probationary period, and Defendant relied upon their records and evaluations in deciding whether to retain her.

133. The harassment culminated in tangible employment actions, including the denial of training, discipline, and Plaintiff's termination. Defendant is therefore vicariously liable, and the affirmative defense set forth in *Ellerth* and *Faragher* is unavailable to Defendant.

134. In the alternative, Defendant cannot establish the *Ellerth*/*Faragher* affirmative defense because it failed to exercise reasonable care to prevent and promptly correct the harassment: its sergeants discouraged Plaintiff from reporting and advised her to seek forgiveness from her harasser; it returned Sgt. McCain to the workplace while her complaint was pending; it took no action when he circulated her messages; and it deemed her complaint "unsubstantiated." Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities; she promptly reported the harassment and the retaliation that followed.

135. In the further alternative, and independent of vicarious liability, Defendant is liable for its own negligence because it knew or should have known of the harassment and failed to take prompt and adequate remedial action.

136. Defendant acted upon a continuing course of conduct.

137. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**<u>COUNT III</u>**
**TITLE VII HOSTILE WORK ENVIRONMENT (SEX AND RETALIATION)**
**42 U.S.C. §§ 2000e-2 and 2000e-3**
**(*Plaintiff v. Defendant DOC*)**

138. Plaintiff repeats, realleges, and incorporates by reference each-and-every allegation and paragraph made in this complaint.

139. When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

140. An employer is vicariously liable, and no affirmative defense is available, when supervisor harassment "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 524 U.S. at 765.

141. Where harassment is perpetrated by co-workers, employer liability exists where the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

142. Employer liability for co-worker harassment also exists where the employer failed to provide a reasonable avenue for complaint. *Huston*, 568 F.3d at 104.

143. The Third Circuit has held that Title VII's anti-discrimination and anti-retaliation provisions can be offended by harassment that is severe or pervasive enough to create a hostile work environment. *Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017).* Under *Burlington Northern*, retaliation is actionable where the employer's conduct is materially adverse, meaning that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 77 (2006). Acts contributing

to the hostile work environment alleged herein, including the events of December 5, 2024, Sgt. Maynard's refusal to train Plaintiff, management's failure to act on her complaints, and her discipline and termination, occurred within 300 days before the filing of the Charge.

144. Here, the conduct to which Plaintiff was subjected occurred because of Plaintiff's sex and because of her protected activity, and was severe or pervasive enough to make a reasonable person in Plaintiff's position believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

145. The harassing conduct directly referred to Plaintiff's sex and to her complaints of sexual harassment.

146. Defendant delegated to Plaintiff's training sergeants the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

147. Defendant knew of the harassing conduct because Plaintiff reported it to her training sergeants, to Lieutenant Joliff, to Defendant's EEO investigators, to Lieutenant Gordon, and to Captain Young, and because Defendant's own security staff discovered Sgt. McCain's circulation of her messages.

148. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

149. The conduct was humiliating, and it unreasonably interfered with Plaintiff's work performance and with her ability to complete her probationary training.

150. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment, culminating in her termination.

151. Defendant provided a futile avenue for complaint, failed to take prompt and appropriate remedial action, and retaliated against Plaintiff for her complaints.

152. Defendant acted upon a continuing course of conduct.

153. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**TITLE VII RETALIATION**
**42 U.S.C. § 2000e-3**
**(*Plaintiff v. Defendant DOC*)**

154. Plaintiff repeats, realleges, and incorporates by reference each-and-every allegation and paragraph made in this complaint.

155. Title VII protects employees from retaliation for attempting to exercise their rights under the Act: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

156. The Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in a manner that is materially adverse, meaning that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.* (internal quotation marks and citation omitted).

157. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006).

158. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

159. Plaintiff engaged in protected activity by disclosing Sgt. McCain's sexual harassment to her training sergeants, formally reporting it to Lieutenant Joliff, participating in Defendant's EEO investigation, and complaining of the retaliation that followed to Lieutenant Gordon and Captain Young.

160. Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination and harassment on the basis of her sex was being violated.

161. Defendant, through its agents and employees, subjected Plaintiff to materially adverse actions at the time of or after her protected activity, including: Sgt. McCain's confrontation of Plaintiff; his circulation of her messages within SCI Phoenix; Sgt. Maynard's refusal to perform his training duties; management's refusal to protect her; heightened scrutiny of her attendance; the backdated Written Reprimand and Notice of Pre-Disciplinary Conference and a second written reprimand issued to her on March 3, 2025, including reprimands that would have remained in her record had her training lieutenant not withdrawn them as issued in error; and the termination of her employment on March 3, 2025.

162. There was a causal connection between Defendant's materially adverse actions and Plaintiff's protected activity, and Plaintiff's protected activity was a but-for cause of those actions.

163. Defendant's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

164. Defendant acted upon a continuing course of conduct.

165. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendant's adverse actions taken against Plaintiff, such as the unusually suggestive proximity in time between events, Defendant's pattern of antagonism and change in demeanor toward Plaintiff after Defendant became aware of her protected activity, the falsity of Defendant's stated reason, Defendant's departure from its own pre-disciplinary notice policy, Defendant's termination of Plaintiff notwithstanding the withdrawal, as issued in error, of the reprimands that accompanied its pre-disciplinary process, the more favorable treatment of employees who had not complained, and the termination of Plaintiff's employment one day before her probationary period was to end.

166. As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
## PENNSYLVANIA HUMAN RELATIONS ACT, AIDING AND ABETTING
## 43 P.S. § 955(e)
**(*Plaintiff v. Defendant McCain, in his individual capacity*)**

167. Plaintiff repeats, realleges, and incorporates by reference each-and-every allegation and paragraph made in this complaint.

168. Plaintiff asserts this Count against Defendant McCain solely in his individual capacity, for damages to be paid by him personally. Plaintiff seeks no relief under this Count against Defendant DOC or the Commonwealth of Pennsylvania.

169. The PHRA makes it an unlawful discriminatory practice for an employer to discriminate against an employee because of sex with respect to compensation, hire, tenure, terms, conditions, or privileges of employment. 43 P.S. § 955(a).

170. The PHRA further makes it an unlawful discriminatory practice for any person or employee to "aid, abet, incite, compel or coerce" the doing of any act declared by Section 955 to be an unlawful discriminatory practice. 43 P.S. § 955(e).

171. At all times material, Defendant DOC was an "employer" within the meaning of 43 P.S. § 954(b), and Defendant McCain was a "person" within the meaning of 43 P.S. § 954(a), a term that expressly includes any "employe," and was an employe of Defendant DOC, and was therefore subject to 43 P.S. § 955(e).

172. Defendant DOC committed unlawful discriminatory practices in violation of 43 P.S. § 955(a) by subjecting Plaintiff to sexual harassment and a sexually hostile work environment because of her sex, by failing to take prompt and appropriate remedial action after she reported the harassment, and by allowing the harassment to culminate in her discipline and termination, as set forth above. Plaintiff does not seek relief against Defendant DOC under the PHRA in this action solely because the Eleventh Amendment precludes this Court from adjudicating such claims against an agency of the Commonwealth.

173. Defendant McCain, Plaintiff's supervising training sergeant, aided, abetted, incited, compelled, and coerced Defendant DOC's unlawful discriminatory practices, including by: (a) sending Plaintiff, his probationary trainee, the sexually explicit photograph described above; (b) confronting Plaintiff with profanity when he learned she had disclosed the photograph, in an effort to prevent her from reporting it; (c) on December 5, 2024, while Defendant DOC's investigation of her complaint was pending, printing and circulating within SCI Phoenix a selectively edited version of their private conversation, from which he had removed his own name and face and the sexually explicit photograph, in order to conceal his sexual misconduct and discredit Plaintiff; (d) using the supervisory authority Defendant DOC had conferred upon him to perpetuate, rather than

prevent, the sexually hostile work environment that Defendant DOC failed to remedy; and (e) after his return to work on December 5, 2024, contributing the training records, evaluations, and input upon which Defendant DOC relied, in whole or in part, in disciplining Plaintiff and terminating her employment on March 3, 2025.

174. Defendant McCain's conduct described above also constituted an attempt, directly or indirectly, to commit unlawful discriminatory practices, within the meaning of 43 P.S. § 955(e).

175. Plaintiff timely exhausted her administrative remedies under the PHRA as to Defendant McCain. Defendant McCain was named individually as a Respondent in the Charge, which was dual-filed with the PHRC pursuant to the worksharing agreement between the EEOC and the PHRC and is deemed filed with the PHRC as of July 21, 2025. The Charge was filed within the time required by the PHRA as to the unlawful discriminatory practices alleged herein, including Defendant DOC's discipline and termination of Plaintiff on March 3, 2025, which Defendant McCain aided and abetted, and Plaintiff further relies upon the continuing violations doctrine.

176. More than one year has elapsed since the Charge was filed with the PHRC, and Plaintiff may therefore bring this action. 43 P.S. § 962(c)(1).

177. As a result of Defendant McCain's violations of the PHRA, Plaintiff has suffered damages, including, but not limited to: pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, economic loss, diminishment of career opportunities, and other harm, both tangible and intangible, and is entitled to attorneys' fees and costs as permitted by law.

## COUNT VI
## DECLARATORY RELIEF ALLEGATIONS
## (*Plaintiff v. All Defendants*)

178. Plaintiff incorporates by reference each and every paragraph and allegation made in the above paragraphs of this complaint.

179. A present and actual controversy exists between Plaintiff and Defendant DOC concerning Defendant DOC's obligations under Title VII, and between Plaintiff and Defendant McCain concerning his obligations under the PHRA.

180. Plaintiff contends that Defendant DOC violated Title VII, and that Defendant McCain violated the PHRA, as complained of herein. As against Defendant DOC, Plaintiff seeks declaratory relief solely under Title VII.

181. Defendants deny these allegations.

182. Declaratory relief is therefore necessary and appropriate.

## COUNT VII
## INJUNCTIVE RELIEF ALLEGATIONS
## 42 U.S.C. § 2000e-5(g)
## (*Plaintiff v. Defendant DOC*)

183. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

184. Title VII authorizes the Court to enjoin an employer from engaging in unlawful employment practices and to order such affirmative relief as may be appropriate, including reinstatement. 42 U.S.C. § 2000e-5(g)(1). Plaintiff seeks injunctive relief against Defendant DOC solely under Title VII.

185. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

186. If this Court does not grant the injunctive relief sought, including reinstatement and the removal from Plaintiff's employment records of the Notice of Pre-Disciplinary Conference, the termination, and any record of the two withdrawn written reprimands, Plaintiff will be irreparably harmed.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised by this complaint.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, and to any defenses to same, including, but not limited to: electronic data storage; employment, personnel, probationary, and training files, including Plaintiff's training book; EEO complaint and investigation files; incident reports, including DC-121 reports; pre-disciplinary conference notices, notes, and minutes; grievance files, including Grievance No. PHX-025-070; shift rosters, daily operational reports, leave requests, leave slips, and leave balances; Commonwealth e-mail accounts, server logs, and print logs, including those for December 5, 2024; the personal cellular telephones, computers, and social media and Facebook Messenger accounts of Defendant McCain; video surveillance footage; files, memos, job descriptions, text messages, social media and Facebook Messenger communications, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets; and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

Plaintiff repeats, incorporates by reference, and realleges every paragraph and allegation in this Complaint as if fully set forth herein at length.

**WHEREFORE**, Plaintiff demands judgment against Defendants, in an amount to be determined at the time of trial plus interest, including but not limited to the following: as against Defendant DOC, under Title VII, a judicial declaration that Defendant DOC violated Title VII; reinstatement to her position with full seniority and credit for completion of her probationary period, or, in the alternative, front pay; back pay and lost benefits, with prejudgment interest; compensatory damages under 42 U.S.C. § 1981a(a)(1); an order pursuant to 42 U.S.C. § 2000e-5(g) enjoining Defendant DOC from engaging in the unlawful employment practices complained of herein and directing the removal from Plaintiff's employment records of the Notice of Pre-Disciplinary Conference, the termination, and any record of the two withdrawn written reprimands; and attorneys' fees, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k); as against Defendant McCain, in his individual capacity, a judicial declaration that Defendant McCain violated the PHRA; compensatory damages under the PHRA, including damages for emotional distress, pain and suffering, humiliation, and loss of enjoyment of life; and attorneys' fees and costs pursuant to 43 P.S. § 962(c.2); and, as against all Defendants, costs, interest, and disbursements of this action, and all other relief available under the law or at equity.

October 12, 2026

Respectfully submitted,
**DEREK SMITH LAW GROUP, PLLC**
By: /s/ Timothy J. Prol, Esq.
Timothy J. Prol, Esq.
PA Attorney ID: 319524
1628 Pine Street
Philadelphia, Pennsylvania 19103
Phone: (215) 391-4790
tim@dereksmithlaw.com
*Attorneys for Plaintiff, Karli Sculnick*